Debra PIKORA, Plaintiff,

v.

BLUE CROSS & BLUE SHIELD OF MICHIGAN, Defendant.

No. 95–CV–71758–DT.

United States District Court,
E.D. Michigan,
Southern Division.

March 31, 1997.

Dwight Teachworth, Michael E. Freifeld, Bingham Farms, MI, for Plaintiff.

Bart M. Feinbaum, Detroit, MI, for Defendant.

### MEMORANDUM OPINION & ORDER RE PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HOOD, District Judge. ·

## I. *FACTS*

### A. INTRODUCTION

This is an employment discrimination case. Plaintiff, Debra Pikora, is a 45 year-old woman who has suffered from migraine headaches since 1976. Stressful situations cause and aggravate her headaches. Treatment has not been successful. For the past several years, Ms. Pikora has also been diagnosed with major depression, a psychiatric disorder. The Plaintiff claims that this condition is casually linked to her migraines, and the level of stress she encountered in her employment with Defendant, Blue Cross and Blue Shield of Michigan.

The Plaintiff began working for the Defendant on either February 10, 1986 or July 23, 1988 (different facts suggest different dates). Plaintiff initially worked as an accounting supply clerk, a position she held for three years. She then applied for a position as a COB Processor II in Defendant's Coordination of Benefits department. She assumed that position on September 30, 1989. Prior to her termination, she was a Customer Service Representative (CSR) at the National Service Center Department, a position which she assumed on March 16, 1991.

The National Customer Servicing Center (now known as the National Customer Operations Department), is one of seven customer service departments at the Metropolitan Service Center. The Defendant has quality and production standards for telephone CSR's in all departments. Each telephone CSR is expected to:

1) handle at least 50 calls per day.

2) be plugged into the telephone system for and available to accept inbound telephone calls for 404 minutes during a work day. This includes time that the CSR is available on a call, in idle, or in wrap up. Failure to meet this standard may subject the CSR to discipline.

3) average only 45 seconds of wrap up time. Wrap time corresponds to the average time, in seconds, that it takes a CSR to make themselves available to receive another inbound call after they finish a call. During this 45 seconds between calls, a telephone CSR also is required to complete paperwork in the event it is necessary to forward a written inquiry to the written CSR station.

4) average on 350 seconds of talk time per telephone call. The 350 seconds include the amount of time a customer is kept on hold.

5) expected to meet a monthly standard of 97% accuracy on the calls processed. The accuracy component focuses on the information given to customers and the

level of service provided to a customer. Failure to meet this production standard can lead to the imposition of discipline on the employee.

Clearly, a large part of this job includes answering telephone calls. These calls originate from subscribers, providers, doctors and hospitals. It is also expected that a telephone CSR handle problems or complaints raised by customers. Sometimes these callers express irritation or anger.

The Plaintiff argues that several months after she assumed her position as a telephone CSR, she began having problems because of the stress caused by the excessive work on the telephones. She had frequent migraine headaches that caused her to be unable to do her job. Ms. Pikora states that this stress would cause the onset or exacerbation of a migraine. Sometimes she would have to lie down on a couch for a while, other times she would have to leave work early. Sometimes the severity of the headache would cause her to vomit.

Plaintiff's Exhibit F indicates that, on February 9, 1993, the company's doctor from the Detroit Industrial Clinic recommended that the Plaintiff be excused from phone work when she is having headaches. However, the next day, the recommendation was changed to "may work without limitation" as Plaintiff's problem was "personal." The Plaintiff alleges that this occurred as a result of the intervention of Defendant so that the company would not have to accommodate her disability.

The Plaintiff states that she requested a transfer to less stressful work, but that the Defendant either failed to follow through or denied her requests. Plaintiff claims she wanted to return to her old position as a COB Processor. The Defendant claims that the Plaintiff failed to follow proper procedure in seeking a transfer to a different position within the company. The Defendant states that the Plaintiff asked that she be transferred due to her headaches, not because of stress. Further, the Defendant states that she was advised by her supervisor, Theresa Collier, that she would have to apply for a position in another department pursuant to the collective bargaining agreement between the parties. In support of this procedure, the Defendant cites another employee, Susan Hicks, who wished to transfer out of her position as a CSR to one less stressful, and did so successfully by following company procedure.

On May 5, 1994, the Plaintiff went on Accident and Sickness (A & S) leave because of her migraines and the onset of major depression. Her psychological problems included thoughts of suicide. A & S leave is a program available to employees who have exhausted all of their available sick leave, and provides a benefit of 70% if base wages for a maximum of 26 weeks. The Plaintiff remained on A & S leave until October of 1994, when she was given permission by her doctor, Dr. Karen Rutkowski, to return to work on November 1, 1994 with medical restrictions. One of these restrictions was a directive that the Plaintiff not return to her current position in Customer Service. The Plaintiff took this letter to CoreSource, the third party administrator for the A & S program. It is the Defendant's position that there were no jobs available that fit Plaintiff's restrictions. The Plaintiff claims that there were numerous other available jobs that the Plaintiff was qualified to do. In fact, the Plaintiff argues that she performed well in her previous assignments before becoming a CSR.

It was at that time that the Defendant advised the Plaintiff that her only alternative was to apply for long term disability (LTD). Long term disability is a program administered by the National Employee Benefits Committee of the Blue Cross and Blue Shield Association which provides 60% of the employees' monthly base salary beginning in January of the year that the employee goes on LTD, including primary social security benefits, if the employee is found to be disabled as defined by the plan. An employee is eligible to apply for LTD on the first day after the sixth month an employee is off work on an A & S leave. If the employee does not return to work after an A & S leave, that employees' status is automatically switched to "pending LTD" status.

In order to apply for this program, the Plaintiff was required to apply for Social

Security. She was denied these benefits. The reason given was that there was a finding that the Plaintiff was able to work at Blue Cross and Blue Shield of Michigan with an accommodation. Once an employee has applied for LTD benefits, in order to return to work, the employee must produce a return to work slip stating that the employee is medically able to resume employment. The Defendant contends that the Plaintiff did not meet this requirement as the Plaintiff did not produce a letter dated subsequent to Plaintiff's date of Application for LTD leave benefits. The Defendant states that the Plaintiff produced Dr. Rutkowski's letter dated October 18, 1994. On October 31, 1994, the Defendant terminated the Plaintiff stating that she may be eligible to return if she became "able to perform the responsibilities of a CSR without health restriction." Plaintiff filed the instant lawsuit on April 22, 1995.

## B. PLAINTIFF'S CLAIMS

Plaintiff claims that she was discriminated against on the basis of disability and age and that she was subject to retaliatory action as a result of a complaint she filed with the EEOC alleging disability discrimination. Her claims are brought under federal and state law. She alleges that the Defendant violated the Americans with Disabilities Act by refusing to transfer her to another position. She also alleges that she was treated differently than other employees younger than she.

Count I—Plaintiff alleges violation of the Americans with Disabilities Act, 42 USC § 12010 *et seq*. ... She suffers from chronic migraine headaches and depression. She states that she requested a transfer to a less stressful position, but that she was instead terminated. Plaintiff also argues that she was qualified to perform the essential functions of her job.

Count II—Elliott–Larsen Civil Rights Act (ELCRA), MCLA § 37.2101 *et seq*. Plaintiff claims that she is a member of a class entitled to protection pursuant to the EL-CRA and that for the same conduct, she was treated differently than her fellow employees on the basis of her age. She claims that the Defendant has a policy of discharging persons over forty due to their age, not job performance.

Count III—Intentional Infliction of Emotional Distress.

Count IV—Title VII of the Civil Rights Act of 1964, 42 USC § 2000e-c, Plaintiff alleges that after filing a complaint with the EEOC, the Defendant retaliated against the Plaintiff.

## II. *ANALYSIS*

### A. STANDARD OF REVIEW

Defendant's Motion is made pursuant to Fed.R.Civ.Pro. 56. When ruling on a Rule 56 motion, this court must determine whether there are issues of fact requiring a trial. In determining whether there are issues of fact requiring a trial, "the inferences to be drawn from the underlying acts contained in the pleadings, must be viewed in the light most favorable to the nonmoving party." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In discrimination cases, federal courts follow the burden of proof analysis set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff, therefore, must first establish a prima facie case of discrimination. *Featherly v. Teledyne Industries, Inc.*, 194 Mich.App. 352, 358, 486 N.W.2d 361 (1992). If plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate some legitimate nondiscriminatory reason for its actions. *Id.* If defendant meets this burden, plaintiff must then prove by a preponderance of the evidence that the legitimate reason offered by the defendant was merely pretextual cover for discrimination. *Id.*

In order to establish a prima facie case of discrimination under the ADA, the plaintiff must prove that she is disabled for the purposes of the statute, and that she is qualified for the position, either with or without a reasonable accommodation. If this is met, the burden shifts to the defendant to rebut those proofs or to show that accommodation would create an undue hardship. *Milton v. Scrivner*, 53 F.3d 1118, 1123 (10th Cir.1995).

## B. PLAINTIFF'S CLAIM UNDER THE ADA

Both parties move for summary judgment on Plaintiff's claim under the Americans with Disabilities Act, so they will be treated together.

On June 11, 1996, the Plaintiff filed this Motion for Partial Summary Judgment pursuant to Fed.R.Civ.Pro. 56(c), alleging that the Defendant discriminated against the Plaintiff in violation of the ADA as a matter of law and that there are no material facts in dispute that would change that result. On June 13, 1996, the Defendant moved for Summary Judgment pursuant to Fed.R.Civ. Pro. 56 on the following grounds: 1) the Plaintiff is not a qualified individual with the meaning of the ADA because she is unable to perform the essential functions of the position of telephone customer service representative (CSR) at Defendant's National Service Center, either with or without a reasonable accommodation; 2) that there is no genuine issue of material fact that there is no position available at Defendant Blue Cross and Blue Shield of Michigan which would provide her with the stress-free work environment the Plaintiff desires, 3) that there is no genuine issue of material fact that the Plaintiff was not returned to work from pending long-term disability leave for a legitimate nondiscriminatory reason.

### 1. Plaintiff's Prima Facie Case

Under the ADA, a disability is:

a) a mental or physical impairment that substantially limits one or more of the major life activities of an individual, or

b) a record of such impairment, or

c) being regarded as having such an impairment.

42 U.S.C. § 12102(2). That Plaintiff's depression and migraines place her within the meaning of "disabled" person is not disputed between the parties See also Hendry v. GTE North, Inc., 896 F.Supp. 816, 822–23 (N.D.Ind.1995).

The Plaintiff argues that she was qualified for a number of other positions within the Defendant's company. The Defendant argues that Plaintiff cannot establish a prima facie case of handicap discrimination under the ADA because Plaintiff is not qualified for the position Customer Service Representative, as she cannot perform the essential function of her job, with or without accommodation. The ADA defines a "[q]ualified individual" as:

> an individual with a disability who, with or without reasonable accommodations, can perform the essential functions of the employment position that such individual holds or desires.

42 U.S.C. § 12111(8). The Code of Federal Regulations provides further guidance as to who is a qualified individual:

> a qualified individual with a disability satisfies the requisite skill, experience, education and other job-related requirements of the [position] and ... with or without reasonable accommodation, can perform the essential functions of the job.

29 C.F.R. § 1630.2(m).

When evaluating whether or not plaintiff can perform the essential functions of her job, the court will consider: "the employer's judgment as to what functions are essential." 42 U.S.C. § 12111(8). The EEOC regulations mirror that section, and also provide for consideration of the amount of time spent on the job performing the function and the consequences of not requiring the incumbent to perform the function. 29 C.F.R. § 1630.2(n)(3).

■ Viewing the facts in light of the above guidelines, it appears that the Plaintiff cannot establish that she is qualified for the position of Customer Service Representative. Plaintiff cannot perform the essential function of her job, that being telephone work, with or without accommodation. The language of the statute provides deference to the employer's judgment of which functions are essential. In this case, the employer has indicated that Plaintiff's ability to service Defendant's customers on the telephone is crucial to the CSR position. In addition, performance standards utilized by the Defendant outline in detail telephone duties which comprise the primary responsibility of the CSR position. [Def. ex. 3] This fact is not disputed by the parties. Plaintiff herself has

indicated that telephone work comprised the majority of her duties as a CSR. Plaintiff also states that she has not been capable of executing that function without aggravation of her disabilities, and is not at present able to resume telephone duties as outlined by the Defendant. Her own psychologist does not recommend that she resume that duty at present.[1] See *Larkins v. CIBA Vision Corporation*, 858 F.Supp. 1572 (N.D.Ga.1994), where the district court granted summary judgment to defendant employer because disabled plaintiff could not demonstrate that she could perform the essential function of telephone customer service representative due to anxiety attacks brought on by post-traumatic stress disorder following an auto accident. Plaintiff has not established a prima facie case of disability discrimination under the ADA. For that reason, Defendant's Motion for Summary Judgment as to Count I of Plaintiff's complaint is GRANTED and Plaintiff's Motion for Partial Summary Judgment is DENIED.

### 2. Defendant's Duty to Accommodate

■ The Plaintiff argues that because Plaintiff can perform, and has successfully performed in the past other positions, namely that of COB Processor II, that she be transferred to that position or to another position that is less stressful as a reasonable accommodation under the ADA.[2] Plaintiff relies on 42 U.S.C. § 12111(9), which states:

job restructuring, part time or modified work schedules, reassignment to a vacant position, ... and other similar accommodations for individuals with disabilities.

*Id.* Unfortunately, because the Plaintiff cannot establish that she is qualified for the CSR position, Plaintiff's prima facie case

fails. Therefore, the Court does not reach the question of whether the Plaintiff is entitled to reassignment to any of the different positions suggested by the Plaintiff as a reasonable accommodation. There may very well be a position within the company for which the Plaintiff is presently qualified. In addition, one of the doctors Ms. Pikora was instructed to see at the Detroit Industrial Clinic was Dr. G.R. Forrer. In his February 1994 report, he stated that it was his belief that Ms. Pikora was a very good worker, and that it would be to the Defendant's advantage to transfer the Plaintiff to another position. That may be true but, under the present posture of this case, the Court cannot impose that duty upon Defendant.

As stated above, the Court's finding that Plaintiff has failed to establish that she was qualified for the position of Customer Service Representative defeats her prima facie case. However, the Plaintiff argues that Defendant discriminated against her, in violation of the ADA, by failing to accommodate Plaintiff as required under the ADA. The pertinent section defines discrimination as including: "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

■ Even if the Defendant was under an obligation to accommodate the Plaintiff, the Defendant would not be required to eliminate an essential function of the CSR position in order to accommodate Ms. Pikora. *Larkins, supra* at 1583. See also *Hall v. United*

---

1. The Defendant claims that the Plaintiff and/or Plaintiff's counsel may have altered the October 18, 1994 letter from the Plaintiff's psychologist, Karen Rutkowski, Ph.D. Evidently, the parties have different versions of that letter. [see Pl. ex. H & Def. ex. 13] The Defendant's version contains the statement that "any position including phones or written customer service would be detrimental." In her deposition, Dr. Rutkowski explained that the last sentence of the third paragraph was added after the letter was typed by her secretary, because she did not recommend that the Plaintiff be placed in a position where she would be required to do consistent phone work.

However, this added meaning comports with the substance of the letter and also with Plaintiff's argument that she be transferred to a different position. The Plaintiff has subsequently sent the Court an amended Exhibit H.

2. The Defendant counters that the Plaintiff is requesting a position that is entirely stress-free, and that such a position does not exist at Blue Cross and Blue Shield of Michigan. However, that is a somewhat extreme reading of the Plaintiff's Complaint and arguments relative to these motions.

*States Postal Service,* 857 F.2d 1073, 1078 (6th Cir.1988) (holding that an accommodation which eliminates an essential function of the job is not reasonable under the Rehabilitation Act). Additionally, the interpretive guidelines for the EEOC state that "an employer or other covered entity is not required to reallocate essential functions" of a job 29 C.F.R.App. § 1630.2. The evidence presented by both the Plaintiff and the Defendant support the finding that telephone contact with clients is an "essential function" of the CSR position and, as such, the Defendant's obligation to Plaintiff does not reach elimination of that function.

The Plaintiff has suggested that she be reassigned to the COB Processor position, one which Defendant concedes she performed adequately. However, the Defendant argues that the Coordination of Benefits Department has undergone a number of changes since Plaintiff last worked there in 1991, and that department has become a much more stressful place to work. The Defendant also argues that this fact, compounded with the fact that Plaintiff's ability to handle inherent job stressors, has decreased since she worked as a COB Processor, renders her unqualified for that position as well.

Further, the Plaintiff does nothing more than allege she has the requisite skills necessary to execute the following positions: Inquiry Specialist: Performance Evaluation Specialist; and COB Processor IV. Defendant points out that the Plaintiff's bare allegations that she is qualified for those positions are not sufficient to establish that as a matter of law for purposes of summary judgment. This, too, precludes the Court from entering an order for Summary Judgment in favor of the Plaintiff.

### C. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COUNTS II & IV

The remaining basis for Defendant's Motion for Summary Judgment pursuant to Fed.R.Civ.Pro. 56 as to Counts II and IV are as follows: 1) there is no genuine issue of material fact that Defendant did not discriminate against the Plaintiff on account of her age; 2) Plaintiff's retaliation claim must be dismissed because the Plaintiff failed to allege retaliation in her EEOC charge, a prerequisite to maintaining a Title VII action.

### 1. Plaintiff's Claim for Age Discrimination Under Elliott–Larsen

■ The *McDonnell Douglas* requirements for a prima facie case of discrimination are set out above, but in brief, a plaintiff must establish that: 1) plaintiff is a member of a protected group; 2) she was subjected to adverse employment action: 3) that she was qualified for the job; and 4) that if the Plaintiff was terminated, she was replaced by someone younger than her. *McDonald v. Union Camp Corporation,* 898 F.2d 1155, 1159–60 (6th Cir.1990).

■ The Plaintiff has not presented sufficient facts to support a prima facie case of age discrimination. Plaintiff, a 45 year old woman, is a member of a protected group, as persons aged 40–70 are presumptively protected. Ms. Pikora was terminated, and the Court will even assume, for the purposes of this motion, that she was replaced by someone younger. However, as noted above, the Plaintiff has failed to carry her burden to establish that she was qualified to perform the essential functions of her job. In addition, Michigan law requires some evidence that age was a "determinative factor" in the employer's adverse employment action. *McDonald, supra* at 1160–61, citing *Matras v. Amoco Oil Co.,* 424 Mich. 675, 385 N.W.2d 586 (1986). This can be demonstrated by showing a predisposition to discriminate and that the predisposition was acted upon. *Id.*

The Plaintiff does no more than allege that her supervisor, Theresa Collier, allowed three individuals, Time Cook, Sandy Frattorolo and Susan Hicks, to come in late to work, take more frequent breaks that allowed by the Defendant's policies, and were not subject to discipline. The Plaintiff has not alleged that these persons or any other persons younger than she were treated differently relative to the issues raised by the Plaintiff in her complaint. As a result, Plaintiff has not met the "determinative factor" requirement for a prima facie case of age

discrimination under Elliott–Larsen. Therefore, the Court is compelled to GRANT Defendant's Motion for Summary Judgment as to Count II of Plaintiff's complaint.

### 2. Plaintiff's Claim for Unfair Retaliation Under Title VII

The Plaintiff claims that when she filed a claim with the EEOC, she was subject to retaliatory conduct by the Defendant. The Plaintiff points out that, under ADA, employer retaliation regarding rights established in the statute are forms of prohibited discrimination. 42 U.S.C. § 12203. This is an accurate statement of the law, however Count IV of Plaintiff's complaint alleges a violation of Title VII. 29 U.S.C. § 2000e. At any rate, under both statutes, it is unlawful to discriminate against an employee because she has opposed any act or practice made unlawful by statute.

The Defendant correctly points out that the Plaintiff filed her EEOC charge on December 28, 1994. On that date, the Plaintiff had already been terminated by the Defendant. So there is no possibility that Ms. Pikora was subject to adverse employment action after that date, as she was not employed by the Defendant at that time. Neither the Plaintiff's complaint nor the EEOC charge contains any allegation that the Plaintiff was subject to retaliatory action on some other grounds prior to her termination. At present, the Plaintiff is barred from alleging retaliation which occurred prior to her termination because she did not raise it in her EEOC charge, which is a jurisdictional requirement for such a claim. *Parsons v. Yellow Freight System, Inc.*, 741 F.2d 871 (6th Cir.1984). Further, the Plaintiff has not made any specific allegations of retaliatory conduct occurring after the Plaintiff's termination which would provide a factual basis upon which this Court could deny Defendant's Motion for Summary Judgment as to this claim. *See Ang v. Procter & Gamble*, 932 F.2d 540, 547 (6th Cir.1991).

The Defendant has not moved for summary judgment with respect to Count III, Plaintiff's claim for intentional infliction of emotional distress. The Defendant only requests that, if the Court dismisses Plaintiff's

two federal statutory claims (the ADA and Title VII), that the Court decline to exercise supplemental jurisdiction over the pendant state claims. [Def. Mot. at 2 n. 1] Because the Court has granted Defendant's Motion for Summary Judgment on the federal statutory claims and the Michigan Elliott–Larsen claim, the Court finds that there is no basis for Plaintiff's intentional infliction of emotional distress claim.

### III. CONCLUSION

**IT IS ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Docket No. 33) is **DENIED**;

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (Docket No. 34) is **GRANTED**; and

**IT IS FURTHER ORDERED** that the Complaint is **DISMISSED** with prejudice.