**Jennie R. POWELL, Plaintiff,**

v.

**Sean MORRIS, et al., Defendants.**

No. C2–97–903.

United States District Court,
S.D. Ohio,
Eastern Division.

March 5, 1999.

David A. Sams, Columbus, OH, for plaintiff.

Winston M. Ford, Mary Beth Foley, Ohio Atty. General, Employment Law Section, Columbus, OH, for defendants.

### OPINION & ORDER

MARBLEY, District Judge.

Plaintiff Jennie Powell filed this suit against Defendants Ohio Department of Rehabilitation and Correction ("ODRC"), and its employees Sean Morris, Mark Schutte and Jeff Wamsley on October 30, 1997. Plaintiff alleged a variety of claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.;* the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111; conspiracy to violate civil rights under 42 U.S.C. § 1985; and various state law causes of action. On November 3, 1998 this Court dismissed Plaintiff's ADA claims against the individual defendants, the § 1985 claim, and all of Plaintiff's state law claims. Plaintiff's remaining claims are her ADA claim against Defendant ODRC and her Title VII sexual harassment claim against all Defendants.

#### I.

Plaintiff was employed from March 7, 1994 until her resignation on February 14, 1996 as a secretary at a medium security prison, London Correctional Institution ("LCI"), one of several correctional institu-

tions operated by Defendant ODRC. LCI employs a "unit management" approach to inmate living. Under this approach, staff work in the inmates' living quarters, and each staff member is responsible for performing duties within the unit's operations, including serving on the Rules Infraction Board and escorting inmates to do laundry and retrieve supplies. The nature of unit management and Plaintiff's duties entailed frequent contact with inmates.

Because of the nature of a job where one works intimately with prisoners, all LCI employees are required to complete at least three weeks of "in-service training" at the Corrections Training Academy in Orient, Ohio. Such training includes courses on firearms, unarmed self-defense, drafting inmate incident reports and unusual incident reports, serving on the Rules Infractions Board, filing complaints under ODRC's sexual harassment policies, and the dangers of fraternizing with inmates. Plaintiff completed this training before beginning work at LCI.

Plaintiff claims that during her employment, several incidents involving various prisoners as well as her supervisors, Defendants Morris, Schutte and Wamsley, contributed to a sexually hostile work environment and employment discrimination based on her asserted "disability:" depression and an anxiety disorder. Morris is the Chief Correction Officer at LCI; Schutte is a Case Manager; Wamsley is the LCI Warden.

Plaintiff has described several incidents to support her claims. Plaintiff's Amended Complaint essentially lists six incidents. First, Plaintiff claims she was attacked by an inmate who was later allowed to "roam her area at will;" this episode resulted in Plaintiff "suffering an emotional breakdown when happening upon [the inmate's] presence on a subsequent date." Second, Plaintiff alleges that Defendants permitted two convicted sex offenders to work unguarded in the same area that she worked, that these men sexually harassed her, and Defendants took no action to end this harassment after she complained of it.

Third, Plaintiff claims Defendants falsely accused her of having an improper relationship with an inmate. Fourth, Plaintiff asserts that in October of 1995 another convicted sex offender motioned as is if he would masturbate in her presence, and Defendants took no actions in response to this incident. Plaintiff claims that all of these incidents, and Defendants' failure to redress to them, made her fearful for her safety. Fifth, Plaintiff alleges that Defendants retaliated against her in her work assignments and subjected her to unfair and disparate treatment after she complained about her working conditions and their impact on her disabling mental impairment. Sixth, in light of Defendants' failure to address her concerns, Plaintiff alleges that she "saw no choice but to take disability leave and seek disability treatment" and Defendants' apathy "effectively drove plaintiff off the job."

In Plaintiff's Second Amended Complaint, Plaintiff additionally claims that Defendants Morris and Schutte in her presence, frequently perused and commented upon pornographic material, confiscated from prisoners, and that Defendant Schutte twice made sexual comments like "you're well built" or "you're a busty woman" to Plaintiff.

Defendants now move for summary judgment on all of Plaintiff's claims.

## II.

### A. *Plaintiff's ADA Discrimination Claim*

Defendants argue that Plaintiff has failed to demonstrate she is a disabled person under the ADA. The Court agrees.

The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). To establish a *prima facie* case of employment discrimination under the ADA, a plaintiff must show: (1) she is disabled; (2) she is otherwise qualified for the position with or without reasonable

accommodation; (3) she suffered an adverse employment decision; (4) her employer knew or had reason to know of her disability; and (5) her position remained open. *See Hammon v. DHL Airways,* 165 F.3d 441, 449-50 (6th Cir.1999); *Monette v. Elec. Data Sys. Corp.,* 90 F.3d 1173, 1185 (6th Cir.1996). If the plaintiff establishes a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its decision. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). In order to survive a motion for summary judgment, a plaintiff must then present evidence that the employer's proffered reason is a pretext for unlawful discrimination. *See Monette,* 90 F.3d at 1186.

■ The ADA provides that the term "disability" means: (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or ® being regarded as having such an impairment. *See* 42 U.S.C. § 12102(2). Plaintiff's claim falls under the first of these definitions. Although the ADA does not define "major life activities," the Equal Employment Opportunity Commission ("EEOC") regulations interpret the term as including "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). The term "substantially limits" means inability to perform, or a severe restriction on the ability to perform, as compared to the average person in the general population. *See* 29 C.F.R. § 1630.2(j)(1). The regulations define a "physical or mental impairment" as "[a]ny mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities." 29 C.F.R. § 1630.2(h)(2). Under certain circumstances, depression may qualify as a disability under the ADA. *See, e.g., Pikora v. Blue Cross & Blue Shield of Michigan,* 970 F.Supp. 591, 595 (E.D.Mich.1997);

*Hendry v. GTE North, Inc.,* 896 F.Supp. 816, 822-23 (N.D.Ind.1995).

■ Quite simply, Plaintiff has failed to present any evidence to support her claim that she is disabled, and thus has failed to establish a *prima facie* case for disability discrimination. Plaintiff has offered no medical records, doctors evaluations, or any other evidence that she suffered from a disability. When asked during her deposition to describe her depression and anxiety disorder, Plaintiff stated that she "cried a lot" and that the inmates and her co-workers "got on her nerves." Plaintiff admitted that she never filed a disability or workers compensation claim.

In *Dewitt v. Carsten,* 941 F.Supp. 1232 (N.D.Ga.1996), the court was faced with an almost identical disability claim from a plaintiff working at a jail. There, the Court held that the plaintiff's job-related stress was not a "disability" under the ADA because the daily stress of working in a correctional institution is not a disability; and, even if it was, it would only disqualify the affected person from working one single class of jobs—those within prisons—and thus did not substantially limit that person's ability to work. *See id.* at 1235-36. The Sixth Circuit has similarly held that a disability which only restricts an employee's ability to work with regard to a narrow range of jobs does not substantially limit a major life activity, and thus does not qualify the employee as "disabled" under the ADA. *See McKay,* 110 F.3d at 373 (dealing with carpal tunnel syndrome).

Here, there is no evidence that Plaintiff's depression and anxiety substantially limited her ability to work. Plaintiff did not even discuss that element in her Memorandum Contra. This failure alone is more than sufficient grounds to dismiss Plaintiff's case.

■ Plaintiff has also failed to establish another prong of her *prima facie* ADA case: that her employer knew or should have known about her disability. An em-

ployer has notice of the employee's disability when the employee tells the employer that she is disabled. *See Hammon,* 165 F.3d 441, 449-50; *Gantt v. Wilson Sporting Goods Co.,* 143 F.3d 1042, 1046 (6th Cir.1998). "The employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation." *Hammon,* 165 F.3d 441, 449-50 (*quoting Gantt,* 143 F.3d at 1046–47). Here, Plaintiff has not alleged or presented evidence to show that Defendants knew about her weakened mental state. Plaintiff has thus failed to satisfy two elements of an ADA *prima facie* case. Defendant's Motion for Summary Judgment on Plaintiff's ADA discrimination claim, therefore, is **GRANTED.**

### B. Plaintiff's ADA Retaliation Claim

■■■ Although she does not list this explicitly as a cause of action, it appears that Plaintiff may be attempting to bring a retaliation claim under the ADA. Her efforts fail. To present a *prima facie* case of retaliation under the ADA, a plaintiff must demonstrate: (1) that she was engaged in protected activity; (2) that she was the subject of an adverse employment action; and (3) that there is a causal link between the protected activity and the adverse employment action. *See Canitia v. Yellow Freight System, Inc.,* 903 F.2d 1064, 1066 (6th Cir.1990). A plaintiff may prevail on a retaliation claim even when, as here, the employer prevails on the original charge of discrimination that serves as the basis of the alleged retaliation. *See Wellman v. Wheeling and Lake Erie Railway Co.,* No. 97–3084, 134 F.3d 373, 1998 WL 25005, *2 (6th Cir.1998). Plaintiff has not, however, established a *prima facie* case. She has not claimed that she engaged in any protected activity under the ADA, and has not explained how her "disability" or participation in a protected activity resulted in the constructive discharge. Defendant's Motion for Summary Judgment on Plaintiff's ADA retaliation claim is, therefore, **GRANTED.**

### C. Plaintiff's Title VII Sexually Hostile Working Environment Claim

■■■ Title VII of the Civil Rights Act of 1964 prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, condition, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). To establish a hostile environment claim in the Sixth Circuit, a plaintiff must show:

 (1) she is a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on her sex: (4) the harassment unreasonably interfered with her work performance and created a hostile work environment; and (5) the defendant knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action.

*Blankenship v. Parke Care Centers, Inc.,* 123 F.3d 868, 872 (6th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 1039, 140 L.Ed.2d 105 (internal quotations omitted). It is now axiomatic that for sexual harassment to be actionable, "it must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). The conduct in question must be judged by both an objective and a subjective standard: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as abusive. *Harris,* 510 U.S. at 21–22, 114 S.Ct. 367. "This standard ... takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." *Id.* at 21, 114 S.Ct. 367.

■■■ Of course, this approach is not susceptible to a "mathematically precise test." *Id.* at 22, 114 S.Ct. 367. To deter-

mine the pervasiveness of workplace harassment, courts should consider, among other things, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's performance." *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Further, "verbal conduct alone can be the basis of a successful hostile work environment claim," *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir.), *cert. denied,* — U.S. ——, 118 S.Ct. 172, 139 L.Ed.2d 114 (1997). Courts should look at the totality of the circumstances, rather than analyze the alleged comments and conduct as independent events. *See Harris*, 510 U.S. at 23, 114 S.Ct. 367. Even if a plaintiff proves the aforementioned elements, however, an employer is not necessarily liable under Title VII. If the employer maintained policies prohibiting sexual harassment, and took prompt and effective action after an employee complained, the employer may not be held liable for sexual harassment. *See Wathen v. General Electric Co.*, 115 F.3d 400, 407 (6th Cir.1997).

In this case, Plaintiff has alleged several factual incidents to buttress her claim of a sexually hostile work environment at LCI. These facts can be separated into two distinct categories: incidents involving prisoners and incidents involving Plaintiff's supervisors. These categories entail significantly different legal analytical frameworks.

### 1. Plaintiff's claims regarding prisoner harassment.

 Courts have repeatedly declined to impose sexual harassment liability upon correctional institutions for the sexually offensive conduct of inmates, as long as the defendant institution took proper preventive and remedial steps with regard to inmate behavior. *See, e.g., Maine v. Oklahoma Dept. of Corrections*, NO. 97–6027, 125 F.3d 862, 1997 WL 602688, * 5, 1997 U.S.App. LEXIS 26982, *7 (10th Cir.1997) (correctional institution not liable for in-

mate's sexual harassment and rape of prison librarian when institution disciplined inmate); *Hicks v. State of Alabama*, No. 97–482, 1998 U.S.Dist. LEXIS 13995 (S.D.Alabama 1998) (female prison guards could not prevail on hostile work environment claim based on masturbation and crude remarks by inmates when guards were informed that they could expect lewd behavior and the corrections institution maintained adequate disciplinary procedures for offending inmates). The propensity of courts to decline imposing liability for prisoner acts is based on solid logical and practical foundations: anyone who works at a prison, particularly in a position with frequent inmate contact, must expect some off-color interactions. Prison employees inherently assume the risk of some rude inmates. It is absurd to expect that a prison can actually stop all obscene comments and conduct from its inmates—people who have been deemed unsuited to live in normal society. The most we can expect and require prisons to do is to implement and enforce policies reasonably calculated to minimize such harassment and protect the safety of its employees. Here, Plaintiff has not rebutted Defendant ODRC's evidence demonstrating that it maintained such policies with regard to inmate behavior.

Further, even if a prison could be held liable for the lewd acts of its inmates, Plaintiff has not alleged incidents severe enough to sustain a claim for a hostile environment. The totality of Plaintiff's alleged facts, even if true, would not rise to the level of a sexually hostile work environment. Further, each of Plaintiff's factual allegations suffer some fatal defect, as discussed below.

First, Plaintiff claims in her Complaint that she was "attacked" by an inmate named Smith, who was later allowed to "roam her area at will." This claim lost all viability when Plaintiff admitted during her deposition that Smith did not sexually assault her, but rather grabbed her by the shoulders to "get her attention" during a

visit to Plaintiff's office to obtain permission to attend his stepfather's funeral. Plaintiff also acknowledged that after she filed an incident report, ODRC placed Smith in solitary confinement for three months, then transferred him to a different unit within LCI and later sent him to another institution altogether. It is clear from these admissions both that Smith did not sexually assault Plaintiff, and that ODRC took effective action to remedy the situation and discipline the inmate. This is the only "sexual assault" from an inmate that Plaintiff ever experienced.

Plaintiff's Complaint also states that Defendants allowed sex offenders to "roam unguarded and unsupervised," that these men sexually harassed her, and Defendants did nothing to stop it. This claim must also fail, again because of Plaintiff's own admissions during her deposition. Plaintiff conceded that a correctional officer was always stationed outside her office (defeating her claim that the prisoners were unguarded or unsupervised), there was a rigorous selection program for inmates allowed to work in her area as clerks or porters, Plaintiff herself participated in the selection of all inmates hired to work in the unit and, in fact, had veto power over the selection of any inmate who worked there, and any time she complained about the conduct of an inmate, LCI immediately removed that inmate from Plaintiff's unit.

■ Moreover, Plaintiff has not claimed that any of the inmates with whom she worked, besides Smith, ever sexually assaulted or harassed her. It is unclear how many of the prisoners in Plaintiff's work area were sex offenders; but the mere fact that some of the inmates had committed sex offenses is irrelevant to the question of whether Plaintiff was sexually *harassed*. The mere proximity of sex offenders in a prison environment is unremarkable, and does not alter a prison employee's working conditions, as required by Title VII jurisprudence. *See Meritor*, 477 U.S. at 67, 106 S.Ct. 2399. In fact, the presence of sex offenders is the *baseline*

working condition in a correctional facility. Plaintiff therefore cannot maintain that her working conditions were *changed* by the mere presence of sex offender inmates. Absent tangible allegations of actual harassment, Plaintiff's bare allegation that some of the prisoners were convicted sex offenders is meaningless.

■ Finally, Plaintiff alleges that an inmate named Hensel once started to take off his pants and motioned as if he would masturbate. Plaintiff was walking down a hallway when she came upon Hensel, who was alone in the office of another secretary. He proceeded to unzip his pants and make the obvious motions. Plaintiff ran away as soon as she saw this, and told no one about it that day. She claims that she may have slipped an incident report under Defendant Wamsley's door the next day, but admits that she did not follow up the report when she learned that it might have been missing. It is unclear whether ODRC disciplined Hensel. It is certain that Hensel was not one of the inmates with whom Plaintiff worked. Further, this was a one-time incident, and "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998). As a single incident of prisoner lewdness, which Plaintiff should have expected or at least contemplated as part and parcel of a prison environment, this episode hardly rises to the level of a pervasively hostile environment.

For the foregoing reasons, Defendant's motion for summary judgment on Plaintiff's Title VII sexually hostile work environment claim with regard to *prisoner* harassment is **GRANTED.**

### 2. *Plaintiff's claims regarding supervisor harassment.*

Plaintiff claims that Defendants Morris and Schutte regularly viewed confiscated pornographic materials in her presence, while making offensive sexual remarks,

calculated to make Plaintiff feel uncomfortable. Defendants respond that they only viewed the material in Morris's office. However, Plaintiff alleges that Morris kept all of the unit's files in that office, so she had to go into this area whenever she needed something out of a file.

Further, Plaintiff alleges that Schutte once or twice commented on Plaintiff being "well-built" or "busty." Defendants argue that, even if Schutte made these comments, they were isolated, off-hand remarks which do not rise to the level of harassment. *See Faragher*, 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998) (simple teasing or offhand comments do not constitute actionable sexual harassment). Plaintiff admitted that Schutte stopped making such comments after she told him she was uncomfortable.

Finally, Plaintiff alleges that Defendants wrongfully accused her of having an improper, sexual relationship with an inmate.

Defendants respond that Plaintiff's failure to report the alleged harassment by her supervisors is fatal to her hostile work environment claim. Defendants assert, and Plaintiff does not deny, that although Plaintiff received extensive training in ODRC's sexual harassment policies, she never filed an incident report, an internal complaint with the warden or ODRC's central office, a union grievance, or any other discrimination charge regarding the alleged conduct. As such, Defendants argue, Plaintiff did not give Defendant ODRC the opportunity to take disciplinary action against Morris and Schutte or otherwise correct their conduct. The Supreme Court recently ruled that, in the context of a hostile environment created by supervisory harassment:

> When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence .... the defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b)

> that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. at 2270, 141 L.Ed.2d 633; *Faragher*, 118 S.Ct. at 2292–93.

The *Faragher / Burlington* tests apply only when the alleged harasser is a "supervisor with immediate (or successively higher) authority over the employee." *Burlington*, 118 S.Ct. at 2270. The parties disagree as to whether Defendants Morris and Schutte should be defined as "supervisors" or "co-workers." It is undisputed that Morris and Schutte had the power of giving work assignments to Plaintiff and evaluating her work. Thus, there is a question of material fact as to whether they were Plaintiff's supervisors, and for the purposes of summary judgment, this Court must construe all allegations in the light most favorable to Plaintiff. Therefore, for the purposes of this Motion only, the Court will assume that Defendants Morris and Schutte were Plaintiff's supervisors.

█ Plaintiff argues that the *Faragher / Burlington* test should not be applied in this case because she has suffered a tangible employment action, in the form of constructive discharge. This theory fails, however, because the Supreme Court, in *Faragher*, explicitly defined tangible employment action as a "discharge, demotion, or undesirable reassignment." *Faragher*, 118 S.Ct. at 2293. The *Faragher* Court does not mention constructive discharge as a tangible employment action. If it had desired, the Supreme Court could have easily listed "constructive discharge" along with the other incidents as constituting a tangible employment action. That it did not do so implies that constructive discharge is not a tangible employment action. Therefore, as Defendant ODRC took no tangible employment action against Plaintiff, the *Faragher/Burlington* test applies.

 To establish an affirmative defense under the first prong of the *Faragher/Burlington* test, the Defendants must prove, by a preponderance of the evidence, that ODRC exercised reasonable care to prevent and correct promptly any sexually harassing behavior. Defendants, however, have only provided Plaintiff's deposition statement that she received some sort of sexual harassment training prior to beginning her job at ODRC as evidence to support their argument that Defendants exercised reasonable care in implementing and maintaining a sexual harassment policy. This evidence leaves significant questions of material fact for this Court to consider. The Court has not seen ODRC's sexual harassment policy; it is not aware of the details of Plaintiff's sexual harassment training, how ODRC disseminated its policy on sexual harassment to its employees or what procedures were required for filing harassment complaints. Without this information, this Court cannot determine whether Defendants exercised reasonable care. As many questions of material facts remain, Defendants have not established the first prong of the *Faragher/Burlington* affirmative defense.

Moreover, Defendants have not adduced enough evidence to support the second prong of the *Faragher/Burlington* test. This prong requires defendants to prove by a preponderance of the evidence that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer. Here, Plaintiff claims that she did complain to Schutte and Morris, and they merely laughed at her requests. Although Defendants claim Plaintiff did not make a formal complaint through the prescribed ODRC procedures, Defendants have never explained what the official harassment procedures are. More importantly, even if Defendant could establish that Plaintiff did not take advantage of the available procedures, the question remains whether her failure to do so was *reasonable* or not. *Burlington* requires that a Plaintiff's failure to utilize internal procedures be unreasonable. The determination of reasonableness in this case is a question of fact which must be determined at trial by the Court.

There is simply not enough evidence at this point for the Court to conclude that ODRC exercised reasonable care to prevent and correct sexual harassment, or that Plaintiff was unreasonable in failing to employ such procedures. For Defendants to prevail on this affirmative defense, they must adduce such evidence at trial. Defendants' Motion for Summary Judgment on Plaintiff's Title VII sexually hostile work environment claim with regard to her supervisors is, therefore, **DENIED.**

Additionally, Defendants Morris, Schutte and Wamsley are **DISMISSED** from Plaintiff's Title VII claims, because individuals cannot be held personally liable under Title VII. *See Wathen v. General Electric Co.*, 115 F.3d 400, 405 (6th Cir. 1997).

### CONCLUSION

Defendants' Motion for Summary Judgment with regard to Plaintiff's ADA claims and Title VII sexual harassment claim with regard to *prisoner* activity is **GRANTED.** The individual Defendants, Morris, Schutte and Wamsley are **DISMISSED** from Plaintiff's Title VII claims. Defendant's Motion for Summary Judgment with respect to Plaintiff's Title VII sexually hostile work environment claims with regard to supervisor harassment is **DENIED.** This case will go to trial on Plaintiff's claim of supervisor harassment, alone. A scheduling order will be sent out shortly.