[Cite as *Papp v. Cuyahoga Cty.*, 2026-Ohio-2078.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

ERIKA PAPP,                               :

     Plaintiff-Appellant,          :
                                   No. 115346

     v.                             :

CUYAHOGA COUNTY,                          :

     Defendant-Appellee.           :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 4, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-934156

---

### *Appearances:*

Dworken & Bernstein Co., L.P.A., and Patrick J. Perotti; The Buckeye Law Group and John P. Colan; The Robenalt Law Firm and Thomas D. Robenalt, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Matthew D. Greenwell and Jake A. Elliott, Assistant Prosecuting Attorneys, *for appellee.*

SEAN C. GALLAGHER, J.:

{¶ 1} Erika Papp, a correction officer employed in the Cuyahoga County Corrections Center ("Jail"), appeals the granting of summary judgment in favor of

Cuyahoga County ("County") on her claims that the County did not adequately prevent the male inmates in the jail from sexually harassing her and other female correction officers between late 2017 and 2020. For the following reasons, we affirm.

{¶ 2} At the end of 2017, the County permitted cross-gender supervision of inmates as a result of an Ohio Civil Rights Commission Conciliation Agreement. That agreement resolved grievances and discrimination charges filed by employees challenging the Jail's then in place, same-gender supervision policy. Papp was the first female correction officer to pursue an assignment supervising male inmates. Papp claims that she was subjected to sexual harassment and exhibitionism on several occasions, aggravated in part by the Jail removing sexual harassment as a standalone infraction for inmate misconduct from the Inmate Handbook, which occurred immediately before implementing the cross-gender supervision policy. She also alleges that the County "refused to prevent, discipline, investigate, or bring charges against the inmates" for sexual harassment and public indecency. Papp was unable to provide dates of when the alleged misconduct occurred specific to her but is "100 percent pretty sure something is happening every day" to her and other female correction officers.

{¶ 3} As an example of the misconduct she endured, Papp recounted a time that an inmate was masturbating behind her when she was supervising in the medical area. She reported that inmate to her supervisors, and the inmate was punished based on the investigation initiated through the Jail's disciplinary system.

Deposition transcript filed Nov. 29, 2023, 90:19-91:7. There is no evidence that Papp encountered that inmate again. *Id.* Papp also generically claimed her supervisors prevented her from filing some combination reports, which are the documents correction officers use to initiate disciplinary procedures against inmates. For example, she remembered one instance when her supervisor crumpled up a combination report she intended to file. Papp, however, could not recall what prompted the report or whether the misconduct was related to sexual harassment. *Id.* at 69:13-17. In another instance, her direct supervisor would not accept a report in which she claimed an inmate "tried" to hug her. The supervisor rationalized that since no contact or touching took place, the attempt was not an infraction.

{¶ 4} Papp did not pursue that decision further despite her own evidence demonstrating a correction officer's ability to elevate a report of misconduct through the chain of command if the immediate supervisor disagrees with the classification of the alleged misconduct as an infraction. As Papp highlighted, although for different reasons, there was evidence in the record of another female correction officer who witnessed an inmate masturbating in his cell and her immediate supervisor declined to permit the combination report from being filed because the inmate was in his cell. The complaint was brought to a superior's attention, and an investigation ensued based on the superior's position that the inmate's conduct constituted a serious infraction — in effect overruling the immediate supervisor's initial decision.

{¶ 5} She also claimed that several inmates would direct lewd and degrading comments at her. Papp conceded that the female inmates used similar abusive language, but in light of the population and gender difference, the male inmates' language was more prevalent and degrading. Papp could not recall reporting those instances to supervisors. For the final allegations, Papp maintained that an ex-inmate sent a letter to the Jail addressed to her personally, although she never read its contents, and one inmate made her feel concerned for her physical safety because he said he would see her once he was released.

{¶ 6} Papp introduced several affidavits of other male and female correction officers who attested to witnessing or being subjected to similar conduct, including several incidents in which inmates would intentionally touch themselves in sexually suggestive manners or masturbate at or in front of female correction officers. Although the affidavits were included in the record, Papp was unaware of the specified instances of misconduct until her deposition, taken during discovery in the underlying case. In other words, misconduct directed towards others did not impact the terms of her employment.

{¶ 7} In addition to the personal accounts, Papp identified nearly 100 out of the over 48,000 combination reports issued between 2017 and 2020 in which correction officers initiated disciplinary proceedings against inmates for all types of infractions, only a subset of which included sexual harassment or exhibitionism that were investigated and resolved through disciplinary measures against the offending

inmates.[1]  For example, in response to one inmate shouting a sexually charged, derogatory comment to a female correction officer, the supervisor approved a three-day isolation period as punishment for the infraction.  In response to another inmate aggressively quizzing a female correction officer about her marital status and refusing to step back on request, the supervisor authorized a six-day isolation period.  The exhibitionist behavior was generally penalized harsher, with the infraction being elevated for "major/serious" discipline and the offender being moved to a specialized floor supervised by male correction officers or placed in administrative detention pending the investigation.  That detention was some form of isolation in the inmate's cell or on another floor with limited access.  There is no evidence in this record explaining the results of those investigations, and importantly, there is no information as to whether any of the inmates punished through the filing of the combination report continued harassing female correction officers after completion of any penalty imposed for the original infraction.

{¶ 8}  The combination reports highlighted by Papp and attached to her motion to certify the class generally followed the above trend:  that female correction officers reported instances of harassment or exhibitionism and that conduct was punished by supervisors or referred for serious discipline.  In other words, Papp's evidence demonstrates that the County routinely investigated reports filed by female

---

[1] Although Papp claims the identified reports are a mere sampling of the relevant ones, it does not appear that all of the relevant combination reports are included in this record or that a complete accounting of the relevant reports was provided to the trial court for consideration.

correction officers and meted out punishments for the alleged misconduct — which included sexual harassment. This latter fact twofold demonstrates that the alleged policy change, removing sexual harassment as a standalone infraction, was inconsequential from a practical perspective and that the policy changes merely redefined inappropriate behavior for specificity instead of lumping all manner of infractions under the vague umbrella of sexual harassment. Papp has not argued otherwise.

{¶ 9} In support of her contention that the County failed to take immediate remedial steps to deter misconduct, Papp claims that the Jail's disciplinary procedures and resulting sanctions were insufficient. She claims that in addition to the internal disciplinary system, the County was required to refer inmates for prosecution to deter future misconduct by other inmates because, in her opinion, isolation or benefit restrictions imposed on individual inmates was not a sufficient deterrent to others. Ohio has proscribed public indecency. Under R.C. 2907.09, exposing one's private parts to nonhousehold members is a misdemeanor of the fourth degree punishable by a jail sentence up to 30 days or a five-year term of community-control sanctions. There is no identified crime related to Papp's sexual-harassment claims based on abusive language. Thus, Papp's argument pertaining to the County's failure to deter is essentially limited to the exhibitionist behavior.

{¶ 10} The trial court granted summary judgment in favor of the County. In two assignments of error, Papp challenges the judgment entered on both the hostile-work-environment and intentional-infliction-of-emotional-distress claims.

{¶ 11} A plaintiff who alleges a hostile-work-environment claim must generally demonstrate that (1) they belong to a protected class; (2) they were subjected to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and did not take prompt remedial action. *Reine v. Honeywell Internatl. Inc.*, 362 F.Appx. 395, 397 (5th Cir. 2010), citing *LeMaire v. La. Dept. of Transp. & Dev.*, 480 F.3d 383, 393 (5th Cir. 2007). A plaintiff seeking recovery for infliction of emotional distress must demonstrate "(1) the defendant intended to cause, or knew or should have known that his actions would result in serious emotional distress; (2) the defendant's conduct was so extreme and outrageous that it went beyond all possible bounds of decency and can be considered completely intolerable in a civilized community; (3) the defendant's actions proximately caused psychological injury to the plaintiff; and (4) the plaintiff suffered serious mental anguish of a nature no reasonable person could be expected to endure." *Ashcroft v. Mt. Sinai Med. Ctr.*, 68 Ohio App.3d 359, 366 (8th Dist. 1990). In other words, for the purposes of the latter claim, Papp must demonstrate that the County's inaction was "so extreme and outrageous that it went beyond all possible bounds of decency." The focus there is not on the inmates' misconduct, but the County's alleged failure to implement reasonable and prompt remedial measures. The failure to demonstrate the sexual-harassment claim necessarily disposes of the claim for intentional infliction of emotion distress.

{¶ 12} Although Papp filed her complaint individually and on behalf of a putative class of other female correction officers, the trial court implicitly denied class certification by granting judgment in the County's favor on Papp's individual claims, which were based on the argument that Papp failed to assert allegations pertaining to all elements of her hostile-work-environment claim. If Papp is unable to bring forward allegations of a hostile work environment individually, she cannot fulfill her role in adequately representing the putative class under Civ.R. 23. *See E. Texas Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403 (1977). That conclusion also resolves her individual claims. Thus, the focus in this appeal is solely on Papp's individual claims for hostile work environment and intentional infliction of emotional distress. *See Brunet v. Columbus*, 1 F.3d 390, 399 (6th Cir. 1993) (if the named plaintiff's claim is disposed of before the class certification is granted, final judgment is warranted). The putative class is not a party to this action. *See Gembarski v. PartsSource, Inc.*, 2019-Ohio-3231, ¶ 29.

{¶ 13} As a result, and contrary to the significant portion of Papp's brief, the allegations pertaining to other female correction officers or the general happenings in the Jail are irrelevant at this stage. The sole issue is whether there is evidence that Papp herself was subjected to a hostile work environment, or at the least, aware of the specific misconduct directed at the other female correction officers that impacted her employment, and whether the County failed to take reasonable measures against the inmates responsible for the harassment. *See, e.g., Freitag v. Ayers*, 468 F.3d 528, 533 (9th Cir.2006) (involving allegations in which two specific

inmates continued their abusive behavior based on the failure of prison officials to timely punish or deter their individual conduct).

{¶ 14} Although there is ample evidence of the inmates' misconduct directed toward the female correction officers in general, this is not a typical case of workplace harassment where misconduct alone demonstrates a basis for the claim. Papp's general focus is on workplace hostile-work-environment cases, but that focus ignores the unique aspect of this case related to the harassers being third-party inmates the County is required to house and supervise. This is not a typical hostile-work-environment case involving an employee or invitee harasser, two types of persons an employer can discipline or exclude from the premises. Even within this unique area, it must be recognized that this is not a case in which inmates are alleged to have organized to specifically target female staff without recourse from the Jail officials. *See, e.g., Brown v. Cook Cty.*, 332 F.R.D. 229, 234 (N.D.Ill. 2019) (plaintiffs alleged that a prison gang called "Savage Life" orchestrated the attacks on jail personnel without an immediate response by the prison officials). Further, the County is not accused of vicarious liability for the acts of its employees encouraging the behavior. *See, e.g., Beckford v. Dept. of Corr.*, 605 F.3d 951, 955 (11th Cir. 2010) (male security officer left female staff alone in an all-male "close management dorm" and the male supervising Lieutenant ignored the female staffer's plea for help after the inmates began ejaculating on windows saying "you were looking for it. I saw you, you were looking for it. You were asking for it" and prison management sent a memorandum to female staff discouraging them from reporting misconduct).

{¶ 15} Instead, the County is claimed to have failed to take appropriate corrective action to prevent third parties, the jailed inmates, from sexually harassing Papp. The County, unlike a typical employer, is required to house and supervise the alleged harassers. The inmates cannot be fired or expelled from the premises as would an employee or business invitee. This has led courts to observe that "[by] choosing to work in a prison, corrections personnel have acknowledged and accepted the probability that they will face inappropriate and socially deviant behavior" on some level. *Slayton v. Ohio Dept. of Youth Servs.*, 206 F.3d 669, 677 (6th Cir. 2000), citing *Powell v. Morris*, 37 F.Supp.2d 1011, 1017 (S.D.Ohio 1999) ("Anyone who works at a prison . . . must expect some off-color interactions. . . . It is absurd to expect that a prison can actually stop all obscene comments and conduct from its inmates — people who have been deemed unsuited to live in normal society."). "Prisoners, by definition, have breached prevailing societal norms in fundamentally corrosive ways." *Id.* It is for this reason that "[c]ourts have repeatedly declined to impose sexual harassment liability upon correctional institutions for the sexually offensive conduct of inmates, as long as the defendant institution took proper preventive and remedial steps with regard to inmate behavior." *Powell* at 1017.

{¶ 16} The inmate's conduct is not being defended or excused by the County, or this panel for that matter. The primary focus of the County's defense is on one element of a hostile-work-environment claim — whether the employer (here the County), took immediate and appropriate corrective action in response to the

individual misconduct of a transient population of offenders. Papp's claims incorrectly focus on the conduct of several inmates as the embodiment of one claim, but that overlooks the basic fact that the County is required to house and supervise the transient population of inmates regardless of their behavior. *See, e.g., Slayton*, 206 F.3d at 677. Papp's allegations must be reviewed through this lens, which includes the Jail disciplinary process in place to punish an individual inmate's misconduct.

{¶ 17} Even when viewing the facts most favorably to Papp, *see* Civ.R. 56(C), she has not established any genuine issues as to material facts relating to all elements of her claims. Papp's individual claims hinge on demonstrating issues of material fact as to whether the County implemented immediate and reasonable remedial measures to deter and prevent the third-party harassment by the inmates. The evidence presented by Papp demonstrated that when she was confronted with instances of sexual harassment, indecent exposure, or other exhibitionist behavior, the inmate was issued an infraction and punished or the matter elevated for an investigation into a "serious" or "major" infraction. There is no evidence that Papp was required to, or indeed did, supervise any offending inmate again following a period of inaction by Jail officials. In fact, there is little focus on the internal disciplinary system altogether. There is no argument or discussion present regarding whether the discipline was ineffective as to the individual inmate punished for a transgression. For example, we have not been provided any

arguments or information regarding internal recidivism rates, the primary metric for evaluating the effectiveness of a deterrent.

{¶ 18} Instead of addressing the disciplinary system in place, Papp shifts her focus and instead argues that the Jail officials' failure to refer inmate sexual harassment or exhibitionism to the county prosecutor for misdemeanor, public indecency charges was required as a remedial measure. This argument largely overlooks the disciplinary process in place and "the difficulties that prison officials encounter in controlling inmate conduct." *Beckford*, 605 F.3d 951, at 959. Contrary to Papp's broad argument, the law "does not require . . . that prisons prevent all manner of harassment at all cost and without regard to important penological interests." *Id.* "[T]here are practical and constitutional limits on what prisons can do to protect staff." *Id.* We are not the first court to wrestle with this concern; however, we must consider the "practical and constitutional limits" on what can be done to protect staff. *Id.* "Prisons cannot, for example, eject unruly inmates like businesses can eject rude customers." *Id.*

{¶ 19} Papp insisted in her appellate briefing and during oral argument that the only acceptable method for the County to curb individual behavior and avoid legal responsibility for the third-party's conduct was to refer each instance of exhibitionism for prosecution. Papp has since disavowed that stance and for good reason. She has not identified any legal requirement in Ohio that an institution must initiate inmate prosecutions to avoid liability when administrative disciplinary systems are in place. Prosecutions may well affect inmate behavior, but they are not

an immediate required response to inmate misconduct. The internal disciplinary system can be instituted immediately. But importantly, this argument suffers from the deficiency noted above, that Papp has not demonstrated the internal disciplinary system to be an ineffective deterrent because she has not produced any evidence of repeat offenders left to harass her a second time following the prison's implementation of its chosen deterrent.

{¶ 20} In this case, there is undisputed evidence presented by both sides demonstrating that the County operated an internal disciplinary system that, even if overwhelmed by the sheer number of infractions yearly issued, was an immediate and reasonable mechanism of deterrence to individual inmates. *See, e.g., Luna v. California Dept. of Corr. & Rehab.*, 2024 U.S. App. LEXIS 9777, *2 (9th Cir. Apr. 23, 2024), citing *Swenson v. Potter*, 271 F.3d 1184, 1193 (9th Cir. 2001) ("The most significant immediate measure an employer can take in response to a sexual harassment complaint is to launch a prompt investigation to determine whether the complaint is justified."). As to Papp's individual allegations, there is no evidence demonstrating that Papp was forced to supervise an offending inmate after she initiated disciplinary process for that inmate. To this end, Papp also has not introduced any evidence of repeat harassment being permitted unchecked by Jail officials to support her claims that the County failed to take reasonable measures. *See, e.g., Freitag*, 468 F.3d at 533 (finding that the evidence establishing that two inmates repeatedly masturbated in front of the female correction officer without any punishment or sanctions demonstrated the prison's potential liability for enabling

sexual harassment). Nor has Papp included any allegations of other Jail employees encouraging or inducing the harassment of female correction officers. *See, e.g.*, *Davis v. Vermont*, 868 F.Supp.2d 313, 321 (D.Vt. 2012) (finding that the allegation that the plaintiff was harassed by inmates based on information only available to other employees demonstrated a viable claim).

{¶ 21} Although there is ample evidence of inmate misconduct, the sole measure Papp claims to have not been enforced by the Jail officials relates to referring criminal charges for the public indecency encountered, which only addresses one aspect of the sexual-harassment claims. Although that is one avenue to demonstrate the County's attempt to remediate the exhibitionist behavior, Papp has not demonstrated that the law requires it along with the full panoply of alternative disciplinary measures that Papp could immediately avail herself of to terminate or punish the individual misconduct. On this point, Papp is conspicuously silent in this appeal — she fails to discuss or dispel the impact of the Jail's internal disciplinary process in general beyond claiming that it does not deter a transient group of individuals as a whole.

{¶ 22} In light of the arguments discussed in this appeal and the evidence presented below, there are no genuine issues of material fact on the remedial element of the hostile-work-environment claim. The judgment in favor of the County is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
SEAN C. GALLAGHER, JUDGE

MICHELLE J. SHEEHAN, A.J., and
KATHLEEN ANN KEOUGH, J., CONCUR